**GAINSCO COMPANIES, H & H Auto & Trailer Sales, and David Holder Appellants**

v.

**Darrell GENTRY, as Guardian for Joshua Gentry; Joe Allen Booth, as Guardian for Jonathan Booth, a Minor; and Kentucky Farm Bureau Insurance Company Appellees**

No. 2004–SC–0276–DG.

Supreme Court of Kentucky.

March 23, 2006.

Rehearing Denied June 15, 2006.

---

Stefan Richard Hughes, Cole & Moore, P.S.C., Bowling Green, Counsel for Appellants.

Debra L. Broz, Stuart & Broz, Bowling Green, Counsel for Appellee, Darrell Gentry, as Guardian for Joshua Gentry.

Paul T. Lawless, William T. Wade, Jr., Barton D. Darrell, Bell, Orr, Ayers & Moore, P.S.C., Bowling Green, Counsel for Appellee, Joe Allen Booth, as Guardian for Jonathan A Booth, a Minor.

James I. Howard, Hensley, Ross & Howard, Horse Cave, Counsel for Appellee, Kentucky Farm Bureau Insurance Company.

Opinion of the Court by Justice JOHNSTONE.

Appellants (Gainsco Companies, H & H Auto & Trailer Sales, Inc., and David Holder) appeal from an order of the Barren Circuit Court granting summary judgment in favor of Appellees (Darrell Gentry, as guardian for his son Joshua Gentry, Joe Allen Booth, as guardian for his son Jonathan Booth, and Kentucky Farm Bureau Insurance Company). The Court of Appeals affirmed the judgment and this Court granted discretionary review. For the reasons set forth herein, we affirm.

On April 6, 2000, H & H Auto & Trailer Sales, Inc. (H & H) purchased a 1996 Dodge pickup truck from Philip Duke Motors of Albertville, Alabama. When H & H took possession of the vehicle, Philip Duke Motors was unable to immediately transfer the truck's certificate of title. H & H brought the truck to Kentucky for resale nonetheless.

About a week later, on Saturday, April 15, 2000, Joe Allen Booth (Booth) and his son, Jonathan, visited H & H and purchased the 1996 pickup truck. David Holder, president of H & H, negotiated the sale. As part of the agreement, Booth traded in a 1995 Dodge pickup truck that he had previously purchased from H & H. Booth also signed an application for a Kentucky certificate of title and registration for the 1996 truck, a credit application, a vehicle transaction record, and a bill of sale. However, because H & H had not yet received the certificate of title from Philip Duke Motors, Holder was unable to assign it to Booth. Nonetheless, Booth drove the pickup truck off the lot the same day.

At the time of the sale, insurance coverage was not discussed. However, Holder knew that Booth had insurance through Kentucky Farm Bureau because he had sold Booth several vehicles in the past and he was aware that the traded 1995 truck was covered when it was purchased. Because the Kentucky Farm Bureau office was closed on Saturday, Mr. Holder waited until Monday, April 17, to confirm and verify insurance coverage. According to his deposition, he spoke with "one of the secretaries" at the Kentucky Farm Bureau office in Glasgow who orally verified coverage. There is no evidence in the record that Holder received any additional confirmation of coverage following this phone call. It is undisputed that Booth's policy with Kentucky Farm Bureau automatically covered the newly-acquired 1996 truck.

Days later, on April 20, Jonathan was driving the 1996 pickup to school when he lost control of the vehicle. One passenger in the vehicle, Joshua Gentry, sustained very serious injuries and is permanently disabled as a result of this unfortunate accident. Later that same day, Holder received the certificate of title to the 1996 truck from Philip Duke Motors. However, because Booth had gone to the hospital with the Gentry family following the accident, the documents assigning title to him were not signed until April 24. They were delivered to the county clerk on April 29.

Darrell Gentry (Gentry) filed an action for damages on behalf of his injured son, naming Booth, Kentucky Farm Bureau, H & H Auto Sales, Holder, and Gainsco Companies (Holder's insurance carrier). The trial court granted Gentry's motion for summary judgment and held that H & H was the owner of the vehicle for insurance purposes. Accordingly, Gainsco was held liable for primary insurance coverage while Kentucky Farm Bureau held secondary coverage. The Court of Appeals af-

firmed the judgment, and this Court granted discretionary review.

The sole issue on appeal is whether H & H was the owner of the 1996 truck for insurance purposes at the time of the accident. The owner of a vehicle is one who "holds the legal title of a vehicle or a person who pursuant to a bona fide sale has received physical possession of the vehicle subject to any applicable security interest." KRS 186.010(7)(a). A licensed motor vehicle dealer is *not* the owner of a vehicle when he "transfers physical possession of a motor vehicle to a purchaser pursuant to a bona fide sale, and complies with the requirements of KRS 186A.220." KRS 186.010(7)(c). KRS 186A.220 sets forth certain requirements for a motor vehicle dealer upon receipt of a vehicle. At subsection (5), the statute delineates the procedure by which a dealer may transfer ownership of a vehicle without assigning a certificate of title:

(5) When [a licensed motor vehicle dealer] assigns the vehicle to a purchaser for use, he shall deliver the properly assigned certificate of title, and other documents if appropriate, to such purchaser, who shall make application for registration and a certificate of title thereon. The dealer may, with the consent of the purchaser, deliver the assigned certificate of title, and other appropriate documents of a new or used vehicle, directly to the county clerk, and on behalf of the purchaser, make application for registration and a certificate of title. In so doing, the dealer shall require from the purchaser proof of insurance as mandated by KRS 304.39–080 before delivering possession of the vehicle.

■ Thus, the statute sets forth an exception to the general rule that the party holding the certificate of title is the owner of the vehicle for insurance purposes. If a dealer wishes to effectively transfer ownership of a vehicle without simultaneously transferring possession of the certificate of title, he must satisfy two requirements: (1) he must obtain the purchaser's consent to file the certificate of title and other documents on behalf of the purchaser, and (2) he must verify that the purchaser has obtained insurance on the vehicle before relinquishing possession. This Court has previously recognized the exception created by subsection (5) of KRS 186A.220, noting that "a car dealer can only take advantage of the exception by first verifying that the buyer has a valid and current insurance policy that covers the purchased vehicle." *Auto Acceptance Corp. v. T.I.G. Insurance Co.*, 89 S.W.3d 398, 401 (Ky. 2002).

■ Here, it is undisputed that Booth took possession of the truck on April 15, but did not simultaneously receive certificate of title. In these circumstances, H & H was required pursuant to KRS 186A.220(5) to obtain Booth's consent to file the certificate of title on his behalf and to obtain verification of insurance coverage. However, in his deposition, Holder stated that he did not call Kentucky Farm Bureau to verify Booth's insurance coverage until April 17. Furthermore, there is nothing in the record that would indicate that Booth provided proof of insurance for the 1996 pickup truck prior to taking it off the lot. Hence, H & H clearly failed to meet this requirement of KRS 186A.220(5).

Nonetheless, Appellants argue that the spirit and policy of KRS 186A.220 were fulfilled because Holder was aware that Booth had valid insurance coverage due to their prior dealings with one another. They point to the fact that Booth's Kentucky Farm Bureau policy did, in fact, cover the newly-purchased truck, which Kentucky Farm Bureau concedes. Therefore, according to Appellants, no violation

of KRS 186A.220 has occurred. Furthermore, Appellants argue that Holder's knowledge of Booth's insurance policy constitutes "proof" within the meaning of KRS 186A.220.

■ We first address Appellants' assertion that the policy goals underlying KRS 186A.220 were satisfied in this case. This argument would be persuasive if KRS 186A.220(5) simply required that the vehicle be insured before the new owner took possession. The statute, however, requires not only that the vehicle actually be insured, but also that dealers obtain *proof* of insurance. While one obvious purpose of the statute is to keep uninsured vehicles off Kentucky roadways, the language of the provision evidences a further goal of the General Assembly: to place the burden on the car dealer to procure proof of insurance coverage before possession is transferred. *See Nantz v. Lexington Lincoln Mercury Subaru,* 947 S.W.2d 36, 39 (Ky.1997) (noting, in dicta, that subsection (5) of KRS 186A.220 demonstrates that the legislature "contemplated whether the commercial dealer should have a duty to require titling of the vehicle prior to relinquishing possession of it and has left such a determination .to the vehicle dealer"). When a car dealer fails to obtain proof of insurance before possession is transferred, he takes the risk that he and/or his insurer will be held liable if the purchaser causes an accident prior to the transfer of the certificate of title for the newly-purchased vehicle. Therefore, the dual purposes of KRS 186A.220 would not be fulfilled if H & H was permitted to avoid liability after it failed to follow the statutory requirements, simply because the truck was actually insured. The language of the statute is clear and unambiguous: it is not sufficient that a vehicle is in fact insured; the dealer must receive proof of this insurance.

■ Moreover, the fact that Booth's Kentucky Farm Bureau policy would have covered the 1996 truck is not determinative of this matter, as Appellants repeatedly assert. The issue herein is not whether the truck was insured; the correct inquiry is whether Booth owned the truck for insurance purposes at the time of the accident. By failing to strictly comply with the statutory procedures of KRS 186A.220(5), H & H failed to validly transfer ownership of the truck to Booth. Accordingly, Gainsco is the primary insurer of the car because H & H continued to be the owner of the truck at the time of the accident. The fact that Booth's insurance policy would have covered the vehicle if he had become the owner is, therefore, completely irrelevant

■ Furthermore, we reject Appellants' argument that Holder's knowledge of Booth's insurance coverage satisfies KRS 186A.220(5) because *written* proof of insurance coverage is not required. We emphasize that the issue before the Court is whether H & H was the owner of the vehicle for insurance purposes at the time of the accident; it is not what, in general, constitutes proof of insurance for purposes of KRS 186A.220. However, because receipt of proof of insurance is a statutory requirement to validly transfer ownership, we must address whether Holder's actions satisfied the proof requirement. Holder's deposition testimony was simply that he knew Kentucky Farm Bureau covered Booth's 1995 truck at the time of *that* sale. Therefore, Holder assumed the 1996 truck would be covered as well. Contrary to Justice Graves' dissenting opinion, knowledge that Booth's 1995 truck was covered by Farm Bureau at the time of that sale does not somehow translate into knowledge that the 1995 truck continued to be covered by Kentucky Farm Bureau, or that the 1996 truck would be covered by

any insurer. Furthermore, while the statute does not expressly state that proof of insurance must be written, the term "proof" clearly contemplates verification beyond mere assumption or knowledge. We find no legal or common sense support for the assertion that knowledge or assumption of a fact constitutes proof of that fact.

Having concluded that H & H failed to satisfy the proof of insurance requirement of KRS 186A.220, we need not address whether H & H obtained Booth's consent to deliver the titling documents to the county clerk.

■ In ruling on a motion for summary judgment, the trial court must examine the record to determine if any real or genuine issue of material fact exists. *City of Florence v. Chipman*, 38 S.W.3d 387, 390 (Ky.2001). Summary judgment is proper when, as a matter of law, it appears that it would be impossible for the non-moving party to produce evidence at trial warranting a judgment in his favor. *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476, 483 (Ky.1991); CR 56.03. Because summary judgments involve no fact finding, this Court will review the circuit court's decision *de novo*. *Blevins v. Moran*, 12 S.W.3d 698, 700 (Ky.App.2000). Here, it is undisputed that H & H did not obtain proof of Booth's insurance at the time possession of the truck was transferred. Therefore, there were no genuine issues of material fact with respect to the issue of ownership of the vehicle, and Gentry was entitled to summary judgment as a matter of law on this issue.

For the foregoing reasons, the opinion of the Court of Appeals is affirmed.

LAMBERT, C.J.; ROACH and WINTERSHEIMER, JJ., concur.

GRAVES, J., dissents by separate opinion, with COOPER and SCOTT, JJ., joining that dissenting opinion.

Dissenting opinion by Justice GRAVES.

Respectfully, I dissent. This case poses the question of first impression, "what constitutes acceptable 'proof of insurance' under KRS 186A.220(5)?" I believe that Holder had obtained sufficient proof of insurance to survive a motion for summary judgment.

As the majority notes, Holder knew that Booth had an insurance policy with Kentucky Farm Bureau from the prior sale of the 1995 truck. Furthermore, the 1995 vehicle was being financed with H & H Auto Sales. As such, Holder had knowledge of Booth's insurance coverage through this previous course of dealing. The majority concludes that the "proof of insurance" requirement contemplates verification beyond mere assumption of knowledge, but does not explain what kind of verification would be ·acceptable. The majority is also swayed by the fact that insurance was not discussed at the time of the sale. What would be the effect of such a discussion? Is it sufficient verification for an auto dealer to simply ask a purchaser whether or not he or she is insured? I do not believe that such oral verification with the purchaser alone is sufficient, and I presume that the majority would agree. The experience of a "course of dealing" verification is more reliable than any discussion about insurance because it is actual knowledge that, at least at the time of the last dealing, that the purchaser was insured. Why, then, does it matter in this case whether Holder discussed insurance with Booth?

In reality, almost any form of proof of insurance carries an assumption. A "proof of insurance" card, for example, carries the assumption that the purchaser has not cancelled his insurance policy since the

card was issued. The assumption through a "course of dealing" is that the purchaser is still insured after the parties' last dealing; the assumption with a "proof of insurance" card is that the purchaser is still insured after the card was printed.

The public policy goal behind the "proof of insurance" requirement is to keep uninsured vehicles off the roads. *Auto Acceptance Corp., supra*, at 401; KRS 304.39–080. As the majority states, the General Assembly intended to place a burden on the car dealer to obtain verification. However, this burden is a means to achieve the statute's policy goal. Requiring a dealer to verify insurance functions as a safeguard to ensure that vehicles are insured one way or another, and to prevent a dealer, who does not transfer title on a vehicle to a purchaser, from handing the keys over to an uninsured motorist. Thus, if a dealer learns that the motorist is uninsured, then he cannot deliver possession of the vehicle. If he does deliver possession of the vehicle to the uninsured motorist without first obtaining proof of insurance, then, consistent with the public policy rationale disfavoring uninsured motorists, the dealer is held responsible for insurance coverage because ownership on the vehicle will be deemed to have not been transferred.

The instant case does not involve an uninsured motorist. Kentucky Farm Bureau does not dispute insurance coverage, but claims secondary liability. Therefore, the harm that the statute seeks to prevent—uninsured motorists—does not exist in this case. While this fact alone does not absolve Holder from the statutory requirement, it provides important contextual information. To the extent that this requirement should be scrutinized, it should be considered with the underlying policy goal in mind.

The only definite way for a dealer to verify insurance coverage is to obtain verification directly from the insurance agency, either written or orally. This kind of direct verification would be difficult for dealers to obtain at the time of a sale, especially during weekends, and the words of the statute do not require it. Yet, Holder took such a step when he contacted Kentucky Farm Bureau to verify Booth's coverage on the next business day, before the accident.

If there was a deficiency in Holder's verification of insurance at the time of the sale, the transfer of ownership of the vehicle was completed when Holder directly contacted Kentucky Farm Bureau on the following Monday. Although this verification occurred after possession of the vehicle was transferred where KRS 186A.220 requires verification before the transfer of possession, it nevertheless cured any deficiency. "A statute should not be interpreted so as to bring about an absurd or unreasonable result. The policy and purpose of the statute must be considered in determining the meaning of the words used." *Kentucky Industrial Utility Customers, Inc. v. Kentucky Utilities Co.*, 983 S.W.2d 493, 500 (Ky.1998). It elevates form over substance to an unreasonable degree to hold an automobile dealer, who takes the necessarily remedial steps, indefinitely responsible for the insurance coverage on a vehicle that was transferred to an insured owner simply because verification did not occur in the proper sequential order.

Holder's knowledge of insurance coverage from a previous course of dealing is certainly not a preferable means to obtain proof of insurance. However, when combined with the fact that he later verified insurance coverage on the next business day by calling Kentucky Farm Bureau, and in light of the public policy consider-

ations, there is sufficient evidence that Holder obtained proof of insurance to survive a motion for summary judgment.

COOPER and SCOTT, J.J., join this dissent.