**COMMONWEALTH of Kentucky,**
**Appellant**

v.

**Barry COFFEY; and Geralean**
**Anderson, Appellees.**

**No. 2006–SC–000172–DG.**

Supreme Court of Kentucky.

March 20, 2008.

Jack Conway, Attorney General, George G. Seelig, Assistant Attorney General, Criminal Appellate Division, Office of the Attorney General, James C. Shackelford, Assistant Attorney General, Criminal Appellate Division, Office of the Attorney General, Frankfort, KY, Counsel for Appellant.

Steven Scott Basil, Glasgow, KY, Counsel for Appellees.

Opinion of the Court by Justice NOBLE.

The single issue on appeal in this case is whether the bare title holder of a vehicle, which is in fact under the dominion and control of a defendant who used the vehicle for drug trafficking, is the "owner" of the vehicle for purposes of forfeiture pursuant to KRS 218A.410(h)(2). While the parties' briefs misname the defendant below, Barry Coffey, as the Appellant in this action, he is actually the Appellee, along with his sister, Geralean Anderson. Given the purpose of the forfeiture statute relat-

ing to substance abuse issues, this Court finds that the Court of Appeals erred, and thus reverses and reinstates the judgment of the trial court, though for different reasons.

## I. Background

Appellee Barry Coffey entered a plea of guilty to possession of a controlled substance, first degree, based on a plea bargain amending his charge down from trafficking in a controlled substance, first degree. A confidential informant working with local police made two controlled buys of substances from Coffey, who was subsequently indicted on two counts of first-degree trafficking. The first buy was made when the informant got into the car Coffey was driving, a 1971 Chevrolet Malibu, made his transaction, and later gave the substance to police. When tested, this substance was determined to be methamphetamine. The second controlled buy occurred the next day, but testing indicated that this material was not a controlled substance. Consequently, his charges were amended as part of a plea bargain to possession of a controlled substance first degree and trafficking in a simulated controlled substance, with a total recommended sentence of four years plus restitution and fees. As a further part of the plea agreement, the Court would conduct a hearing to determine whether the 1971 Malibu would be forfeited to the Glasgow Police Department. Coffey entered his plea on the agreement, and was sentenced on October 18, 2004 accordingly.

The Commonwealth then filed a motion to forfeit the Malibu, claiming that it had been used to conduct drug trafficking activity. The motion also notified the trial court that Coffey was not the title holder of the Malibu, but rather the title named his sister Geralean. Nonetheless, the Commonwealth believed the vehicle was subject to forfeiture.

On January 21, 2004, the trial court conducted a forfeiture hearing with Coffey and his sister Geralean present and represented by counsel, but neither offered any evidence regarding how Geralean came to be the title holder, the value of the vehicle or how forfeiture had been treated in similar cases. However, certain testimony developed that Geralean had stated that she did not know why the car was registered in her name, that Coffey always used the vehicle and that she was not responsible for any items in the car. Additional evidence established that Coffey did use the vehicle, paid for the insurance, kept it in the garage at his house, and paid the taxes on it. Coffey and Geralean both asserted at the hearing that the Malibu was not sufficiently tainted by the charge of possession to which Coffey pleaded, that forfeiture would be disproportionate to that charge considering the value of the vehicle, and that Geralean was an "innocent owner" under the forfeiture statute.

Citing a Delaware case, *In re One 1985 Mercedes Benz Automobile*, 644 A.2d 423 (Del.Super.Ct.1992), that is factually similar to the facts developed here, the trial court concluded that Coffey had placed title in his sister's name solely to avoid forfeiture, that Geralean did not know why title was put in her name, that Coffey treated the vehicle as if he owned it, and therefore he was the true owner. The court held that Geralean was a "straw man," and further had failed to produce any indicia of ownership other than bare title that would entitle her to claim the "innocent owner" defense to avoid forfeiture under the statute.

The Court of Appeals reversed, finding that since the substance abuse forfeiture statute did not define "owner," that the definition of owner of an automobile should

be taken from KRS 186.101(7)(a) in the chapter that deals with auto, driver's and commercial licensure. It therefore determined that "owner" meant title holder or person who has possession of the vehicle due to a bona fide sale. In this case, that person was Geralean, so the Court of Appeals reversed the trial court and remanded for reconsideration of her status in accordance with its Opinion. This appeal followed.

## II. Analysis

Findings of fact made by a trial court are reviewed under the clearly erroneous standard, CR 52.01, and rulings of law are reviewed *de novo*. *Jackson v. Commonwealth*, 187 S.W.3d 300, 305 (Ky.2006). Here, the trial court did both in this hearing to the bench on forfeiture. The appellant, the Commonwealth, argues that the court was correct in its rulings. Only the application of the law has been challenged by the Appellees.

The trial court viewed ownership of the Malibu as definable by dominion and control over the vehicle. Coffey, who had titled the vehicle in his sister's name without telling her why, drove the vehicle all the time, paid insurance and taxes on it, and completed a drug transaction in the vehicle, according to the trial court, was the "true owner," while Geralean, the title holder was merely a "straw man". Without using the words, the court essentially found that Coffey was the equitable owner, and therefore the Malibu was subject to forfeiture, which the court ordered.

In its reasoning, however, the trial court did not look to the statutes to define "owner." The Court of Appeals did, but did not consider the context of the forfeiture statute and the definitions contained in Chapter 218A. KRS 218A.405 is the definitions statute for KRS 218A.405 to 218A.460. This obviously includes KRS 218A.410,

which sets forth the property that is subject to forfeiture, and at (1)(h) specifically lists vehicles that are used to transport, or in any manner facilitate transport for sale or receipt, all controlled substances. At (1)(h)(2), an exception is listed for a conveyance (vehicle) that an owner can establish was used without his knowledge or consent, hence the term, "innocent owner." The word "owner" does not appear in the definitions statute.

Keying on the terms "owner" and "vehicle," the Court of Appeals looked to other statutes relating to vehicles to find a definition, and located one in the vehicle licensing chapter. At KRS 186.010, the Court of Appeals found a definition for "owner" that required only legal title or possession pursuant to a bona fide sale in order to obtain vehicle licensure. Applying that definition, the Court of Appeals determined that Geralean was the owner of the Malibu, and reversed and remanded for findings consistent with its Opinion, apparently not considering whether Geralean had failed to make her case that she was an "innocent" owner at the hearing. The record indicates that she did not establish any indicia of ownership other than bare title. The burden to do so is clearly placed on the one claiming innocent ownership under KRS 218.410(1)(h)(2), which requires that innocence be established "by the owner thereof." To this extent the Court of Appeals erroneously omitted a necessary and important finding, even if their "owner" definition were correct.

The licensing definition, however, is not the correct definition to apply to vehicle forfeiture under the controlled substances chapter. That chapter, KRS Chapter 218A, has its own definitions, and while it does not specifically define "owner," it does define "interest in property" at KRS 218A.405(1)(b) as the interest of a person under any trust arrangement where any

other person holds legal or record title of personal or real property. Essentially, the statute recognizes that property subject to a trust is still forfeitable. Standing alone, this might appear to fall short of the facts in this case, because there is no evidence of a formal trust arrangement between Geralean and Coffey. However, at subsection (5)(b), "trustee" is simply defined as "any person who holds legal or record title to personal or real property in which any other person has an interest." Read together, ownership under these circumstances is defined relating to forfeiture in a manner similar to that encountered in equitable trust law. Coffey's ownership interest in this case is similar to that conveyed by a constructive trust. *Cf. Keeney v. Keeney*, 223 S.W.3d 843, 849 (Ky.App. 2007) ("Constructive trusts are created by the courts in respect of property which has been acquired by fraud, or where, though acquired originally without fraud, it is against equity that it should be retained by him who holds it. . . . [A] constructive trust may be imposed where title is taken under circumstances of circumvention . . . ." (internal quotation marks, brackets, and citation omitted)). In this way, a transfer of title simply to avoid the potential effects of forfeiture statutes works an inequity and cannot be asserted to avoid the forfeiture. Thus, since the forfeiture portion of the controlled substances chapter contains its own definition, it is not appropriate to look to the licensing chapter to define "owner." At the same time, under KRS 218A.410(1)(h)(2), if a title holder can establish that he or she acts as an owner of the property through dominion and control of the vehicle, and that he or she had no knowledge of or did not consent to use of the vehicle for illegal drug activity, then he or she has the innocent owner defense. The facts specific to each claim of ownership will determine who the owner is for purposes of forfeiture, and the statute does require an innocent owner to establish his or her status, not the Commonwealth.

■ While forfeiture statutes do have certain punitive aspects that often make their application harsh, they also serve important nonpunitive goals. *Smith v. Commonwealth*, 205 S.W.3d 217 (Ky.App. 2006). When it comes to drug trafficking, the preventive aspect is clear. If one stands to lose valuable property, then one should think twice about using it in the commission of a drug crime. If that property has been obtained as the fruits of criminal drug related activities, then those ill-gotten gains should not be left to the benefit of the criminal. Given that the very purpose of Chapter 218A is to curb misuse of controlled substances, defining "owner" as one who has an interest in property when title is being held by another appropriately prevents a drug dealer from titling vehicles or other property in someone else's name in order to use the property in illegal activity and yet escape forfeiture. At the same time, in factual scenarios where there is bona fide ownership in another person, such as when a mother loans her son a car that she exercises general dominion and control over, which he then uses to traffic drugs without her knowledge, the innocent owner defense offers protection.

■ Under this definition, while Geralean held legal title, the real interest in the property came from Coffey who exercised dominion and control over the vehicle. It must be noted here that Geralean produced no evidence of treating the car as if it were hers, or in any way exercised the rights and obligations of ownership. In fact, the record indicates that she professed no knowledge as to why the vehicle had been titled in her name—until her brother got caught selling drugs in it. The Malibu was thus subject to forfeiture,

which was appropriately ordered by the trial court. The fact that this definition comes from the controlled substances chapter makes this definition appropriate, but necessarily narrow. It is not intended to apply outside the chapter or when innocent ownership can be established.

### III. Conclusion

Because Coffey acted as the owner of the Malibu, even though legal title was held by his sister, Geralean, he had an "interest in property" under KRS 218A.405(1)(b) and (5)(b). Geralean presented no evidence to establish that she was the innocent owner of the Malibu. She was present and represented at the hearing on forfeiture conducted by the trial court, but did not establish any indicia of ownership other than holding legal title to the vehicle. To the contrary, she claimed no knowledge as to why the vehicle was titled in her name, did not use it, and took no responsibility for items found in it. Consequently, under this statute and the facts of this case, Coffey is the owner of the Malibu for purposes of the forfeiture statute, and the trial court ruled correctly. The Opinion of the Court of Appeals is reversed, and the judgment of the trial court is reinstated for reasons consistent with this Opinion.

LAMBERT, C.J.; CUNNINGHAM, SCHRODER and SCOTT, JJ., concur.

MINTON, J., dissents by separate opinion in which ABRAMSON, J., joins.

Dissenting Opinion by Justice MINTON.

I respectfully dissent because I disagree with the majority's conclusion that Geralean Anderson lacked standing to contest the forfeiture of a motor vehicle of which she was the record title owner.

Under our controlled-substance-related forfeiture statute, "vehicles ... which are used, or intended for use, to transport, or in any manner to facilitate the transportation" of illegal controlled substances are "subject to forfeiture...."[1] And I agree with the majority that the Malibu in question was subject to forfeiture. But the Malibu—like any other vehicle—cannot be forfeited "by reason of any act or omission established by the owner thereof to have been committed or omitted without his knowledge or consent...."[2] This means that a so-called *innocent owner* may thwart forfeiture of his or her vehicle by establishing that the act that led to the forfeiture proceedings occurred without that owner's knowledge or consent. The paramount question in these types of innocent-owner forfeiture proceedings is, therefore, whether the owner has established that the act leading to the forfeiture actually occurred without the owner's knowledge or consent. Before that question may be answered, however, a threshold question must be answered: who has standing to assert the innocent-owner defense? Unlike the majority, I believe the threshold question of standing is the only question we may properly address in this case.

It is clear to me that the overarching question of whether Anderson's assertion of the innocent-owner defense would ultimately prove to be meritorious is not properly before us because the trial court merely found that Anderson lacked standing to assert an innocent-owner defense. Indeed, page two of the trial court's opinion and order expressly finds that "a person cannot claim to be an 'innocent owner'

**1.** Kentucky Revised Statutes (KRS) 218A.410(1)(h).

**2.** KRS 218A.410(1)(h)(2).

and avoid forfeiture of a motor vehicle ... when the facts suggest that person was only a record owner...." So I strongly disagree with the majority's criticism of the Court of Appeals' failure to consider whether Anderson "had failed to make her case that she was an 'innocent' owner at the hearing."

Unlike the majority, I agree with the Court of Appeals that the only question on appeal is a very narrow one: whether Anderson has standing to assert an innocent-owner defense. The question before us should not be whether Anderson's assertion of the innocent-owner defense will ultimately prove to be successful. In fact, I believe the majority usurps the trial court's fact-finding function by making a finding that Anderson will be unable to prevail on the merits of her innocent-owner defense.

Although the majority does not openly admit that it is ruling on the merits of Anderson's innocent-owner defense, it does comment that Anderson "produced no evidence of treating the car as if it were hers, or in any way exercised the rights and obligations of ownership. In fact, the record indicates that she professed no knowledge as to why the vehicle had been titled in her name—until her brother got caught selling drugs in it." The only reasonable interpretation of the majority's comments would be that they address the sufficiency of Anderson's innocent-owner defense, not whether she has the right to assert such a

defense in the first place. I would insist that the trial court must first make a decision on the merits of Anderson's innocent-owner defense before the merits, or lack thereof, of an innocent-owner defense can be the proper focus of appellate review. And on the subject of fact-finding, I also believe that the majority's de facto ruling on the merits of Anderson's innocent-owner defense is improper because neither it nor the trial court made the proper findings regarding the constitutional propriety of forfeiting the Malibu.[3]

In addition to disagreeing with the majority's preemptive finding that Anderson's attempted assertion of the innocent-owner defense should fail on its merits, I also disagree with the majority's conclusion that Anderson lacks standing to assert the innocent-owner defense. She is, after all, the only registered owner of the Malibu.

Regrettably, the General Assembly has not provided a definition of *owner* in Chapter 218A of the KRS. But the General Assembly has defined *owner* elsewhere in the KRS. Specifically, the General Assembly defined *owner* in KRS 186.010(7)(a) as "a person who holds the legal title of a vehicle or a person who pursuant to a bona fide sale has received physical possession of the vehicle subject to any applicable security interest." Although that definition does not specifically apply to KRS Chapter 218A, we recently applied it to situations outside the scope of Chapter

---

**3.** *See Commonwealth v. Fint,* 940 S.W.2d 896, 897–98 (Ky.1997) (holding that courts should consider factors such as gravity of offense and sentence imposed on others in jurisdiction who commit similar crimes in determining whether forfeiture violates Eighth Amendment); *Hinkle v. Commonwealth,* 104 S.W.3d 778, 782 (Ky.App.2002) ("It is now well established that punitive forfeitures such as this one implicate the excessive-fines clauses of the federal and state constitutions. Not only must the trial court determine that the prop-

erty is sufficiently tainted by the criminal act to be subject to forfeiture, it must also determine that the particular forfeiture is not grossly disproportionate to the particular offense. Among the factors relevant to this determination are the gravity of the offense, the potential penalties, the actual sentence, sentences imposed for similar crimes in this and other jurisdictions, and the effect of the forfeiture on innocent third parties.") (footnotes omitted).

186.[4] I believe that in this case, we can, and should, logically apply the definition of *owner* as enacted by the legislature.

The majority acknowledges the existence of KRS 186.010(7)(a) but inexplicably chooses not to apply it. Instead, the majority engages in an unnecessary analysis of KRS 218A in order to liken the situation at hand to a constructive trust. Such an imaginative conclusion is wholly unnecessary because the General Assembly has already provided an express definition of the very term at issue, a definition that the majority has summarily rejected without showing that it could not, or should not, be applied to the case at hand. The sole issue in the case at hand is who qualifies as an owner of a motor vehicle in order to raise the innocent-owner defense in a motor vehicle forfeiture proceeding, so it appears perfectly logical to me that we should resolve this issue by using the definition of the term at issue already provided by the General Assembly.[5]

I believe it will come as a shock to the citizens of the Commonwealth that the registered owner of a vehicle may now be powerless to contest his or her vehicle's forfeiture.[6] Clearly, the Malibu could not have been sold or otherwise transferred without Anderson's participation. And it appears that Anderson's name may well have been listed as the policyholder of the insurance policy pertaining to the Malibu. So it is beyond debate that any person injured by operation of the Malibu could have filed a tort action against Anderson. It is quite a leap of logic, therefore, to find that Anderson may suffer the burdens attendant to motor vehicle ownership but may lack sufficient standing to raise an innocent-owner defense.[7]

I share the majority's concern that savvy narcotics traffickers may transfer their legal interest in vehicles to other nominal owners, a/k/a straw men, in order to protect their vehicles from forfeiture. But I trust the trial courts of the Commonwealth will adhere to their duty to scrutinize all innocent-owner defenses in forfeiture proceedings. Such close scrutiny should greatly reduce, if not eliminate, straw men from succeeding on an innocent-owner defense because forfeiture will still be appropriate unless the record title owner can demonstrate that he or she truly had no knowledge of, nor had consented to, the transactions which gave rise to the forfeiture proceedings.

Of course, the General Assembly could, if it so desired, completely eliminate any

---

**4.** *See Gainsco Companies v. Gentry*, 191 S.W.3d 633, 636 (Ky.2006) (applying definition of *owner* set forth in KRS 186.010(7)(a) to determine the owner of a vehicle for the purpose of insurance coverage).

**5.** The mere fact that the definition of *owner* is set forth at a different section of the KRS than the one at issue is clearly not a sufficient reason to ignore the definition. Indeed, as stated previously, we have recently applied that definition in a broader context than mere vehicle licensure. *See Gainsco Companies, supra.*

**6.** Under KRS 446.080(4), all words and phrases used in the Kentucky Revised Statutes "shall be construed according to the common and approved usage of language, but technical words and phrases, and such others as may have acquired a peculiar and appropriate meaning in the law, shall be construed according to such meaning." Certainly, the record title owner of a vehicle would be considered to be an owner of the vehicle, as the term *owner* is commonly used and understood. Likewise, if the term *owner* is deemed to be one that has acquired a peculiar meaning in the law, we would be wise and on the safest footing if we construed the term using the definition already provided to us by the General Assembly.

**7.** Obviously, Anderson's brother may also have an equitable ownership interest in the Malibu.

possibility that a straw man could successfully raise the innocent-owner defense by enacting a statute similar to that already enacted by the United States Congress.[8] However, as currently enacted, KRS 218A.410(1)(h)(2) merely refers to an *owner*, without specifically excluding nominal owners from the realm of who may be considered an *owner*. Because we are constrained to construe statutes as they are written without adding or deleting any terms from them,[9] we simply lack the authority to declare by judicial fiat that the term *owner*, as used in KRS 218A.410(1)(h)(2), actually means true owner or any owner other than a nominal owner, regardless of how appealing such an amendment may appear to be.

In short, I believe the majority errs in finding that Anderson lacks standing to contest the forfeiture of the Malibu. I would affirm the Court of Appeals and remand this matter to the Barren Circuit Court for determination on the record as to whether Anderson has met, or can meet, her burden under KRS 218A.410(1)(h)(2) to assert successfully the innocent-owner defense.

ABRAMSON, J., joins this dissent.

---

8. The federal civil forfeiture statute specifically provides that an *owner* of property subject to forfeiture does not include "a nominee who exercises no dominion or control over the property." 18 U.S.C. § 983(d)(6)(B)(iii).

9. *See, e.g., Hale v. Combs*, 30 S.W.3d 146, 151 (Ky.2000) (holding that court must interpret statute as enacted, without adding or subtracting language, and may not surmise as to what was intended by legislature but was not expressed in enacted statute).