David M. GRITTON, Appellant

v.

COMMONWEALTH of Kentucky, Appellee

NO. 2014–CA–000725–MR

Court of Appeals of Kentucky.

RENDERED: DECEMBER 4, 2015; 10:00 A.M.

BRIEF FOR APPELLANT: Bruce D. Prizant, Jane W. Prizant, Louisville, Kentucky

BRIEF FOR APPELLEE: Jack Conway, Attorney General of Kentucky, Frankfort, Kentucky, Ken Riggs, Assistant Attorney General, Frankfort, Kentucky

BEFORE: CLAYTON, D. LAMBERT, AND J. LAMBERT, JUDGES.

## OPINION

D. LAMBERT, JUDGE:

David Gritton (Gritton) appeals from the Jefferson Circuit Court's March 18, 2014 order finding that a truck in his possession was forfeited pursuant to Kentucky Revised Statutes (KRS) 218A.410. After review, we reverse the judgment.

Gritton is unemployed and receives social security disability benefits. He has a history of selling drugs. On May 31, 2012, Gritton, along with his daughter, Robin Purtilar (Robin), and his son-in-law, Stephen Purtilar (Stephen), tendered three separate cashier's checks to Bill Collins Ford in Louisville, Kentucky, in exchange for a Ford F-250 pick-up truck. The checks totaled $19,465.70.[1] Gritton also bought an insurance policy on the truck that same day and named himself the insured. Robin and Stephen are the registered owners on the truck's title.[2]

Around the time the truck was purchased, the police received a tip that Gritton had resumed dealing drugs "very strongly."[3] In response, the police observed Gritton's residence for one and one-half months. The police stated that they saw the truck parked in the driveway four to five days per week during this period.

On July 17, 2012, the police obtained a search warrant and searched the residence. The police found pills in a pocket of a pair of shorts, a calendar with drug-related notes written on it, a notebook with some additional notes, eleven pill bottles (five empty and six with various kinds of pills inside), and ninety loose pills. The police also found the paperwork and both sets of keys for the truck. Gritton was later indicted on four counts of trafficking in a controlled substance, and one count of endangering the welfare of a minor. The Commonwealth agreed to dismiss the

---

1. The checks were written for the following amounts: $5,000.00, $5,565.70, and $8,900.00.

2. They are not parties to this action.

3. Gritton had been caught selling drugs earlier in 2012. He forfeited $285,000.00 as a result; however, $15,000.00 was returned to him.

charges in exchange for a forfeiture hearing on the truck.

At the forfeiture hearing, Stephen testified that he and his wife had bought the truck for their son. Stephen further stated that Gritton had given $8,900.00 toward the purchase price, and that the checks were split into separate payments to avoid detection by the Internal Revenue Service (IRS). Stephen also testified that Gritton started driving the truck on the date of purchase because his son could not afford the monthly payments and because Gritton's own truck had broken down. This latter bit of testimony contradicted Robin's sworn affidavit, which stated that Gritton first borrowed the truck one month after the date of purchase.

Gritton testified at the hearing and provided conflicting testimony as to when he gave his daughter the $8,900.00. He acknowledged that he had been convicted of a felony drug offense in the late 1990s and had gone to prison as a result. Gritton further confirmed that he received disability benefits and admitted to insuring the truck on the date of purchase. According to Gritton, he used the truck for hauling jobs in an effort to earn some extra money.

The circuit court considered the evidence and made the following findings of fact: Gritton was unemployed, the truck was purchased in a manner to avoid IRS reporting requirements, both sets of the truck's keys were in Gritton's house, Gritton maintained insurance on the truck, and the truck was seen almost exclusively at the home of Gritton. The circuit court then found that these facts were enough under Kentucky law to require Gritton to prove that he lawfully acquired the truck. After finding that Gritton was unable to do so, the circuit court ordered forfeiture. This appeal followed.

On appeal, Gritton argues that the circuit court's decision was improper because the facts were insufficient to link the truck to violations of KRS 218A. Thus, Gritton claims that he never should have had to prove that he bought the truck with legitimate funds. For the following reasons, we agree.

KRS 218A.410 governs Kentucky forfeiture law. Under that statute, any proceeds, including personal property traceable to an exchange of a controlled substance in violation of KRS 218A, are subject to forfeiture. *See* KRS 218A.410(j). Furthermore:

It is well-established that the Commonwealth bears the burden of proof in forfeiture actions. *Osborne v. Commonwealth,* 839 S.W.2d 281 (Ky.1992). To meet its burden of proof and make a *prima facie* case, the Commonwealth must produce "slight evidence of traceability." *Id.* at 284. This means that the Commonwealth must "produce some evidence that the currency or some portion of it had been used or was intended to be used in a drug transaction." *Id.* If the Commonwealth provides additional proof that the currency sought to be forfeited was found in close proximity, then it is deemed sufficient to make a *prima facie* case. If the Commonwealth establishes its *prima facie* case, the burden is then on the defendant to rebut this presumption by clear and convincing evidence. *Id.*

*Smith v. Commonwealth,* 339 S.W.3d 485, 487 (Ky.App.2010).

*Smith* and *Osborne* both involve currency forfeiture. However, *Brewer v. Commonwealth,* 206 S.W.3d 343 (Ky.2006), sets forth that this procedure applies to personal property forfeitures as well.[4] Moreover

4. After noting that firearms are not expressly mentioned in the statute but nevertheless con-

on appeal, regardless of the class of property at issue, the trial court's factual findings are reviewed for clear error, while its rulings of law are reviewed *de novo*. *Commonwealth v. Coffey*, 247 S.W.3d 908, 910 (Ky.2008).

Here, the circuit court's findings were insufficient, even under the extraordinarily low standard provided in *Osborne*, to shift the burden to Gritton. The truck's location during six weeks of police surveillance, the location of the truck's car keys, and Gritton's insurance policy only tend to show that Gritton was the truck's true owner—not that he bought the truck with illicit funds. Furthermore, it does not follow, even slightly, from Gritton's lack of employment that he bought the truck with unlawful proceeds. We cannot equate lack of employment with lack of income or lack of lawfully obtained assets when the record so clearly demonstrates the opposite. Gritton had received disability income for more than ten years prior to the forfeiture hearing and had recently received $15,000.00 following the forfeiture of $285,000.00 earlier in 2012.[5] Even if coupled with the circuit court's finding that the truck was purchased in a manner to circumvent the IRS, Gritton's lack of employment only indicates, at most, the down payments may have originated from unreported income. Any attempt to say the funds were illegally obtained, much less the proceeds of a drug deal, is a mere accusation and too tenuous to be called slight. Accordingly, we reverse the decision of the Jefferson Circuit Court.

LAMBERT, JUDGE J., CONCURS.

CLAYTON, JUDGE, CONCURS IN MAJORITY OPINION AND WRITES SEPARATELY.

CLAYTON, JUDGE, CONCURRING:

I concur with the majority opinion. I write separately to express my concern regarding the wording of the forfeiture statute, KRS 218A. 410.

After the Commonwealth makes a prima facie case of the "slight evidence of traceability" of the property sought to be forfeited, it falls upon the claimant to rebut this presumption by clear and convincing evidence. There are several concerns with forfeiture laws; chief among those concerns are that they require individuals to prove their innocence and that the very agencies charged with enforcing the law have a financial stake in forfeiture efforts.

As Justice Charles Leibson wrote in his dissent in *Osborne v. Commonwealth*, 839 S.W.2d 281, 285 (Ky.1992):

> Respectfully, I dissent as to Part I affirming the order of forfeiture as to the motor vehicle. I dissent as to both Parts I and II in the reasoning of the Majority Opinion addressing the effect of the presumptions stated in the forfeiture statute.

> Consistent with the Kentucky Constitution, the General Assembly has the power to create *law*, but not to create *facts*. Here the forfeiture provisions of KRS

---

stitute "personal property," the Kentucky Supreme Court held

> that when it seeks to forfeit firearms allegedly used in furtherance of a violation of KRS Chapter 218A, the Commonwealth bears the initial burden of producing some evidence, however slight, to link the firearms it seeks to forfeit to the alleged violations of KRS 218A. The burden only shifts

to the opponent of the forfeiture if the Commonwealth meets its initial tracing burden. *Brewer v. Commonwealth*, 206 S.W.3d 343, 348 (Ky.2006).

5. It is unclear from the record on appeal whether the Commonwealth had also agreed to dismiss Gritton's charges which led to the forfeiture of $285,000.00, five months prior to these charges.

218A.410 (j) and (h), under the pretext of presumptions, substitute law for facts. First, we address subparagraph (j). The General Assembly mandates that "currency found in close proximity to controlled substances ... are presumed to be forfeitable." Such a presumption would not be offensive when judicially construed, as the Majority does, to mean "that any property subject to forfeiture under (j) must be *traceable* to the exchange or intended violation," if the law stopped here.

But the statute then makes the presumption a conclusive *fact* rather than a mere rational presumption by posing an insurmountable, and therefore constitutionally impermissible, burden on the victim of the forfeiture, stating:

> "The burden of proof shall be upon claimants of personal property to rebut this presumption by clear and convincing evidence."

Thus the victim of the forfeiture is required to prove a negative, not only to the satisfaction of the trier of fact, but "by clear and convincing evidence." Whether the property is traceable to the drug transaction may well be inferable from the totality of the circumstances, but the General Assembly has no power to make the mere fact of proximity, standing alone, conclusive proof that the money is drug-related unless the victim of the forfeiture can persuade the trier of fact to the contrary by "clear and convincing evidence."

In sum, the statute can create a *prima facie* case, but the burden of persuasion remains with the Commonwealth. We should adopt a *substantial connection* test, meaning that if the Commonwealth fails to prove to the satisfaction of the trier of fact that there is a *substantial connection* between the property seized and a drug offense, forfeiture is not permissible. A decent respect for the constitutional rights of persons suspected of complicity in drug violations, and punished by forfeiture, requires no less.