RENDERED:  MAY 14, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-0650-MR

DELORES ZEPEDA                                                       APPELLANT

v.
APPEAL FROM SCOTT CIRCUIT COURT
HONORABLE BRIAN K. PRIVETT, JUDGE
ACTION NO. 18-CI-00096

CENTRAL MOTORS, INC.                                                 APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  GOODWINE, MAZE, AND MCNEILL, JUDGES.

MAZE, JUDGE:  Delores Zepeda appeals from a summary judgment of the Scott

Circuit Court dismissing her claims against Central Motors, Inc. (Central Motors).

Zepeda argues that Central Motors' failure to comply with all of the statutory

requirements of KRS[1] 186A.220 served to invalidate its transfer of ownership of a

---

[1] Kentucky Revised Statutes.

vehicle to the buyer. We agree with the trial court that Central Motors substantially complied with the requirement of KRS 186A.220(1) and strictly complied with the requirements of KRS 186A.220(5). Therefore, ownership of the vehicle transferred to the buyer upon delivery of possession, and Central Motors ceased to have any obligation to insure the vehicle. Hence, we affirm the summary judgment granted by the trial court.

This action arises out of a motor vehicle accident that occurred on August 14, 2014, in Scott County, Kentucky. Zepeda was a passenger in a 2002 BMW 530i (the vehicle) driven by Darley Morales but owned by Juan Garcia. Zepeda suffered injuries as a result of the crash. Morales did not survive.

Subsequently, Zepeda brought this action against Morales' Estate and Garcia. Zepeda also filed an action against Allstate Property and Casualty Company, seeking underinsured motorist (UIM) coverage which had been issued to a member of her household. And of particular relevance to this appeal, Zepeda asserted a claim against Central Motors, alleging that its insurance is responsible for damages because it failed to properly transfer title to Garcia.

The vehicle at issue was sold by Elite Motors of Clarksville, Tennessee on August 23, 2012. Tennessee issued a title with a lien held by Elite Motors. Subsequently, the purchasers failed to pay the loan and the vehicle was repossessed. On March 14, 2014, Elite Motors sold its interest in the vehicle to

Loan Portfolio Services. Central Motors purchased the vehicle on March 19, 2014, and brought the vehicle to Lexington on the same date. The parties agree that Central Motors did not notify the Fayette County Clerk that the vehicle had been brought into the county within 15 days, as required by KRS 186A.220(1). The parties also agree that Central Motors did not pay the transfer fee within 15 days, as required by KRS 186A.220.

On July 24, 2014, Garcia executed a purchase agreement with Central Motors for the vehicle. As part of that transaction, he also executed a power of attorney that permitted Central Motors to execute any other paperwork necessary to transfer title. At that time, Garcia paid Central Motors the necessary fees required to transfer title and fees. In addition, Garcia executed a retail finance agreement to finance his purchase of the vehicle from Central Motors. Finally, Safe Auto Insurance issued an Auto Insurance Policy Declaration on behalf of Garcia, which was provided to Central Motors. Garcia took possession of the vehicle the same day.

On August 11, 2014, Central Motors submitted the documents to the Fayette County Clerk. These documents included an application for a motor vehicle title. Central Motors paid the required fees at that time. On August 13, Central Motors filed a title lien statement with the Woodford County Clerk, which was Garcia's county of residence. The title for the vehicle was issued in Garcia's

name on August 15, and the vehicle registration was completed and delivered to Garcia on August 18. These latter two dates were after the accident.

Central Motors moved for summary judgment, arguing that it was not the owner of the vehicle for insurance purposes as a matter of law. Zepeda filed a cross-motion for summary judgment, arguing that Central Motors remained the owner of the vehicle and primarily liable for insurance coverage. The trial court agreed with Central Motors, finding that it substantially complied with all statutory requirements to effectively transfer the vehicle to Garcia on July 24, 2014.

Even though Central Motors failed to notify the county clerk when it received the vehicle from out of state under KRS 186A.220, the trial court held that it cured that defect and substantially complied with the statute when it delivered the documents and application of title to the county clerk on August 11, 2014. Because it complied with all requirements of a valid transfer, the trial court concluded that Central Motors was not the owner of the vehicle on August 14, 2014, and had no owner liability at that time.

Finding no genuine issues of material fact, the trial court granted Central Motors' motion for summary judgment and denied Zepeda's cross-motion. The court designated its order as final and appealable pursuant to CR[2] 54.02, and Zepeda's other claims remain pending. This appeal followed.

---

[2] Kentucky Rules of Civil Procedure.

"[T]he proper function of summary judgment is to terminate litigation when, as a matter of law, it appears that it would be impossible for the respondent to produce evidence at the trial warranting a judgment in his favor." *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476, 480 (Ky. 1991). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56.03. The record must be viewed in a light most favorable to the party opposing the motion for summary judgment, and all doubts are to be resolved in his favor. *Steelvest*, 807 S.W.2d at 480. The trial court must examine the evidence, not to decide any issue of fact, but to discover if a real issue exists. *Id.* Since a summary judgment involves no fact-finding, this Court's review is *de novo*, in the sense that we owe no deference to the conclusions of the trial court. *Scifres v. Kraft*, 916 S.W.2d 779, 781 (Ky. App. 1996).

In this case, there are no disputed issues of material fact. Rather, the only question is whether Central Motors remained the owner of the vehicle for insurance purposes on August 14, 2014 due to its failure to comply with the statutory requirements of KRS 186A.220. "Kentucky is a certificate of title state for the purposes of determining ownership of a motor vehicle and requiring

-5-

liability insurance coverage." *Potts v. Draper*, 864 S.W.2d 896, 898 (Ky. 1993). *See also* KRS 186.010(7)(a) (defining "owner" to mean "a person who holds the legal title of a vehicle or a person who pursuant to a bona fide sale has received physical possession of the vehicle subject to any applicable security interest."). However, KRS 186A.220(5) "created an exception to the general statutory scheme that makes the title holder the owner of a vehicle for insurance purposes." *Auto Acceptance Corp. v. T.I.G. Ins. Co.*, 89 S.W.3d 398, 401 (Ky. 2002). Specifically, if the dealer chooses to retain the title documents and deliver them directly to the county clerk, then "the dealer shall require from the purchaser proof of insurance as mandated by KRS 304.39-080 before delivering possession of the vehicle." KRS 186A.220(5)(b). *See also Travelers Indem. Co. v. Armstrong*, 565 S.W.3d 550 (Ky. 2018).

As discussed above, Central Motors obtained proof of insurance from Garcia prior to delivering possession of the vehicle to him. However, Central Motors failed to comply strictly with other requirements of KRS 186A.220. First, Central Motors did not notify the clerk of its assignment within 15 days when it purchased the vehicle and brought it into Kentucky as required by KRS 186A.220(1). And second, Central Motors failed to deliver the application for title transferring to Garcia prior to the accident. Because Central Motors failed to

-6-

strictly comply with these provisions, Zepeda argues that it is not entitled to take

advantage of the "safe harbor" provisions of KRS 186A.220(5).

But in *Travelers*, the Kentucky Supreme Court rejected this argument,

holding as follows:

> The provisions in sections 1 to 4 of KRS 186A.220 are
> directory, rather than mandatory. By violating the strict
> requirements of the provisions (namely, the 15 day
> requirement) but still accomplishing the goal (notifying
> the clerk of the acquisition of the vehicle), the intention
> of the statute is still upheld. We note that, in describing
> this statute as directory, this does not mean non-
> compliance is permissible. If the dealer fails to comply,
> at all, then there is no compliance with KRS 186A.220
> and the dealer is still the "owner." However, substantial
> compliance, *i.e.*, late compliance, may still allow the
> dealer to take advantage of the exception in KRS
> 186.010(7)(c). The intention of the legislature in those
> provisions was to effectuate an efficient registration and
> titling process. If a dealer complies with these
> requirements late, it does not vitiate the overarching goal.
> Thus, the statute is directory and substantial compliance
> is sufficient for those sections. A licensed dealer,
> therefore, can cure an untimely compliance with KRS
> 186A.220, sections 1 through 4, by complying at a later
> date. If an accident occurs before the dealer has
> complied (in which case, at that point, there would be no
> compliance rather than substantial compliance), that
> dealer will still be the statutory "owner" of the vehicle.
> If the dealer has complied before the accident, it can still
> avail itself of the exception in KRS 186.010(7)(c). It,
> therefore, greatly behooves a dealer to timely comply
> with these requirements lest it be liable for damages
> before it complies.

*Id.* at 567 (footnotes omitted).

The Court in *Travelers* made it clear that "when the proper legal documents are transferred from the dealer to the buyer, the responsibility for insurance coverage on the part of the dealer ceases." *Id.* (quoting *Auto Acceptance Corp.*, 89 S.W.3d at 400-01, and *Nantz v. Lexington Lincoln Mercury Subaru*, 947 S.W.2d 36, 38-39 (Ky. 1997)). Even if the dealer fails to strictly comply with the requirements of KRS 186A.220(1)-(4), the dealer will not be considered the owner of the vehicle if it complied with those requirements prior to the accident and it verified the buyer's insurance prior to delivering possession. The controlling question is whether Central Motors complied with the statutory requirements prior to the accident on August 14, 2014.

Zepeda notes that Central Motors has never notified the county clerk of its acquisition of the out-of-state vehicle by completing the statutory form. Consequently, Zepeda argues that Central Motors did not substantially comply with all of the requirements of the statute. Thus, Zepeda concludes that Central Motors remains an owner of the vehicle notwithstanding its compliance with the provisions of KRS 186A.220(5).

The trial court held that, when Central Motors delivered the required paperwork to the Fayette County Clerk on August 11, 2014, that paperwork was sufficient to constitute substantial compliance with the notification requirement of KRS 186A.220(1). The Court in *Travelers* noted that a single failure to strictly

-8-

comply with a requirement of KRS 186A.220(1)-(4) does not result in the dealer remaining the statutory owner forever, without any recourse. "Such a policy would bring the auto industry to a halt and cause a whirlwind of legal squabbles without merit, also undermining the goals of these statutory provisions." *Travelers*, 565 S.W.3d at 556. On the other hand, the Court in *Travelers* also recognized that "not following the letter of the law in KRS 186A.220 . . . would undermine and diminish the legislative intent." *Id.* As a result, if a dealer fails to comply with one of the requirements in sections (1) through (4), then there is no compliance, substantial or otherwise, and the dealer will remain the statutory owner of the vehicle. *Id.* The fact that Garcia had insurance coverage for the vehicle is not relevant to a determination of whether Central Motors substantially complied with its statutory duties. *Gainsco Companies v. Gentry*, 191 S.W.3d 633, 637 (Ky. 2006).

By failing to strictly comply with the requirements of KRS 186A.220(1), Central Motors took the risk that it would retain responsibility for insurance coverage on the vehicle. Furthermore, Central Motors never filed the statutory form notifying the Fayette County Clerk of its acquisition of the vehicle from out-of-state. However, the purpose of KRS 186A.220(1), along with other provisions of the statute, is "to regulate and license dealers of vehicles doing business in this state, in order to prevent frauds, impositions, and other abuses

upon its citizens, and to protect and preserve the investments and properties of the citizens of this state." *Travelers*, 565 S.W.3d at 559 (quoting KRS 190.015). Consequently, the provisions of KRS 186A.220 should be read broadly to further that purpose. *Id.* at 565.

By filing the required paperwork to transfer the vehicle to Garcia, Central Motors accomplished the purpose of KRS 186A.220(1). Under *Travelers*, Central Motors' actions amount to "substantial compliance" with the statute. Moreover, Central obtained proof of insurance from Garcia before giving him possession of the vehicle, and it filed the application for a certificate of title with the required fees prior to the accident.

KRS 186.010(7)(c) provides that

[a] licensed motor vehicle dealer who transfers physical possession of a motor vehicle to a purchaser pursuant to a bona fide sale, and complies with the requirements of KRS 186A.220, shall not be deemed the owner of that motor vehicle solely due to an assignment to his dealership or a certificate of title in the dealership's name. Rather, under these circumstances, ownership shall transfer upon delivery of the vehicle to the purchaser, subject to any applicable security interest[.]

Since Central Motors strictly complied with the requirements of KRS 186A.220(5) and substantially complied with the other requirements of KRS 186A.220(5), we agree with the trial court that it is entitled to take advantage of the exception in KRS 186.010(7)(c). Nevertheless, Zepeda argues that Central

-10-

Motors' delivery of the documents to the Fayette County Clerk on August 11, 2014 was not sufficient to constitute strict compliance with KRS 186A.220(5). The title was not issued in Zepeda's name until August 15, 2014, and the vehicle was not registered in Zepeda's name until August 18. Since both of these dates occurred after August 14, Zepeda maintains that Central Motors remained the owner of the vehicle on the date of the accident.

However, Zepeda's reading of KRS 186A.220(5) is not consistent with a plain reading of KRS 186.010(7)(c), which deems ownership to transfer upon delivery of the vehicle. Furthermore, the current version of KRS 186A.220(5) makes clear that the dealer has two options to transfer title to a vehicle. First, the dealer "shall deliver the properly assigned certificate of title, and other documents if appropriate, to such purchaser, who shall make application for registration and a certificate of title thereon." KRS 186A.220(5)(a). When the dealer assigns a vehicle to a purchaser under this section, "the transfer and delivery of the vehicle is effective immediately upon the delivery of all necessary legal documents, or copies thereof, including proof of insurance . . . ." KRS 186A.220(5). In the alternative, the dealer may, with the purchaser's consent, deliver the assigned certificate of title and other appropriate documents directly to the county clerk and make application for registration and a certificate of title. KRS 186A.220(5)(b). When this section is read in conjunction with KRS

186.010(7)(c), the only reasonable interpretation is that the legislature intended ownership of the vehicle would pass to the buyer upon compliance with the requirements of KRS 186A.220(5)(b) and delivery of the vehicle.

In any event, Central Motors had filed all necessary paperwork and paid all required fees necessary to transfer the vehicle prior to the date of the accident. Therefore, we agree with the trial court that Central Motors was not the owner of the vehicle on August 14, 2014, and had no liability for insurance coverage. Consequently, the trial court properly granted summary judgment for Central Motors on this issue.

Accordingly, we affirm the summary judgment entered by the Scott Circuit Court.

ALL CONCUR.


BRIEF FOR APPELLANT:       BRIEF FOR APPELLEE:

Joseph Rugg              R. Craig Reinhardt
Lexington, Kentucky       Lexington, Kentucky